UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability company; and 3M COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INDIVIDUALS AND ENTITIES DOING BUSINESS AS THE AMAZON SELLING ACCOUNT IDENTIFIED IN SCHEDULE 2; and DOES 1-10,<br><br>Defendants. | No.  2:22-cv-1019<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

## I.   INTRODUCTION

1. This case involves Defendants' unlawful and expressly prohibited sale of counterfeit 3M Company ("3M") stethoscopes in the Amazon.com store (the "Amazon Store"). Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") and 3M (collectively with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently prevent and enjoin Defendants from causing future harm to Amazon's and 3M's customers, reputations, and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

2. Amazon owns and operates the Amazon Store and equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

more than 100 countries around the globe. Some of the products are sold directly by Amazon, while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit and infringing goods from being sold in its stores. In 2021 alone, Amazon invested over $900 million and employed more than 12,000 people to protect its stores from fraud and abuse. Amazon stopped over 2.5 million suspected bad actor selling accounts before they published a single listing for sale.

3. 3M designs, develops, manufactures, and sells a wide variety of products in the medical field, including stethoscopes. Since the 1960's, 3M has manufactured and sold stethoscopes to medical professionals in the United States. Every day, 3M's stethoscopes are relied upon and trusted by millions of medical professionals across the globe to assess, diagnose, and monitor their patients of all ages. 3M has sold millions of stethoscopes in the United States over the past 50 years, including in the Amazon Store. 3M distributes these stethoscopes under various trademarks, including the 3M, Littmann, and other trademarks shown below. 3M is a global leader in auscultation technology—providing innovative solutions to improve patient care. 3M's Littmann stethoscopes are trusted worldwide for precision, acoustic excellence, reliable design, and exceptional performance, helping clinicians detect difficult-to-hear body sounds and improve patient outcomes. 3M's stethoscopes are a time-tested and reliable way to assess patients' heart and lung medical ailments. 3M's work is more valued than ever in the present reality of COVID-19, as the company is utilizing its decades of expertise to supply providers with the tools they need to save patients' lives.

4. 3M owns, manages, enforces, licenses, and maintains IP, including various trademarks. Relevant to this Complaint, 3M owns the following registered trademarks ("3M Trademarks").

| Mark | Registration No. (International Classes) |
|---|---|
| 3M | 3,398,329 (IC 10) |
| 3M | 2,097,659 (IC 10) |
| 3M (logo) | 2,097,658 (IC 10) |
| LITTMANN | 0,751,809 (IC 10) |
| LITTMANN | 2,683,822 (IC 10) |
| Littmann Quality L logo | 2,681,330 (IC 10) |
| L circle logo | 1,568,178 (IC 10) |

| | |
|---|---|
| L | 3,728,353 (IC 10) |
| CLASSIC III | 5,045,735 (IC 10) |
| CARDIOLOGY IV | 5,045,736 (IC 10) |
| MASTER CARDIOLOGY | 3,253,234 (IC 10) |

True and correct copies of the registration certificates for the 3M Trademarks are attached as **Exhibit A**.

5. Defendants advertised, marketed, offered, and sold counterfeit 3M products in the Amazon Store, using the 3M Trademarks, without authorization, to deceive customers about the authenticity and origin of the products and the products' affiliation with 3M.

6. As a result of their illegal actions, Defendants have infringed and misused 3M's IP, willfully deceived and harmed Amazon, 3M, and their customers, compromised the integrity of the Amazon Store, and undermined the trust that customers place in Amazon and 3M's products. Defendants' illegal actions have caused Amazon and 3M to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, 3M, and their customers.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 4

## II. PARTIES

7. Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

8. 3M Company is a Delaware corporation with its principal place of business in St. Paul, Minnesota.

9. Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint. Defendants are the individuals or entities who operated, controlled, and/or were responsible for the selling account identified in **Schedule 2** attached hereto ("Defendants' Selling Account" or "Selling Account"). Defendants personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. Defendants took intentional and affirmative steps to hide their true identities and whereabouts from Amazon and 3M by using fake names and/or contact information, and unregistered businesses to conduct their activities. Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

10. On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, and sell counterfeit 3M products. The identities of the Doe Defendants are presently unknown to Plaintiffs.

## III. JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over 3M's Lanham Act claims for trademark infringement, and Amazon's and 3M's Lanham Act claims for false designation of origin and false advertising, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The Court has subject matter jurisdiction over Amazon's and 3M's claims for violation of the Washington Consumer Protection Act pursuant to 28 U.S.C. §§ 1332 and 1367.

12.    The Court has personal jurisdiction over all Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's and 3M's claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the 3M Trademarks and which otherwise infringed 3M's IP. Additionally, Defendants shipped products bearing counterfeit versions of the 3M Trademarks to consumers in Washington. Each of the Defendants committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and 3M substantial injury in Washington.

13.    Further, the named Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights are the state or federal courts located in King County, Washington.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington. Venue is also proper in this Court because Defendants consented to it under the BSA.

15.    Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

### IV.    FACTS

**A.    Amazon's Efforts to Prevent the Sale of Counterfeit Goods**

16.    Amazon works hard to build and protect the reputation of its stores as a place where customers can conveniently select from a wide array of authentic goods and services at competitive prices. Amazon invests vast resources to ensure that when customers make

purchases in Amazon's stores—either directly from Amazon or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

17. A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, and sell counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

18. Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to detect and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls.

19. In 2017, Amazon launched the Amazon Brand Registry, a free service to any rights owner with a government-registered trademark, regardless of the brand's relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and accurately report potentially infringing products using state-of-the-art image search technology. More than 700,000 brands

are enrolled in Brand Registry, and those brands are finding and reporting 99% fewer suspected infringements since joining Brand Registry.

20. In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased. In 2021, over 23,000 brands were using Transparency enabling the protection of more than 750 million product units.

21. In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Amazon's Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. In 2021, there were more than 20,000 brands enrolled in Project Zero. For every listing removed by a brand, Amazon's automated protections removed more than 1,000 listings through scaled technology and machine learning, stopping those listings from appearing in Amazon's stores.

22. Amazon has robust seller verification processes, deploying industry-leading technology to analyze hundreds of unique data points and robust processes to verify information provided by potential sellers. In 2021, Amazon prevented over 2.5 million attempts to create new selling accounts, stopping bad actors before they published a single product for sale. Amazon is also constantly innovating on these tools and systems. For example, Amazon requires prospective sellers to have one-on-one conversations with one of its team members to verify the seller's identity and documentation, further enhanced through verification of the seller's physical location and payment instruments. Amazon also leverages machine learning models that use hundreds of data points about the prospective account to detect risk, including relations to previously-enforced bad actors. These measures have made it more difficult for bad actors to hide.

23. Once a seller begins selling in Amazon's stores, Amazon continues to monitor the selling account's activities for risks. If Amazon identifies a bad actor, it closes that actor's selling account, withholds funds disbursement, and investigates whether other accounts are involved in unlawful activities.

24. In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, are integral components of Amazon's efforts to combat counterfeits.

**B.    3M and Its Anti-Counterfeiting Efforts**

25. 3M also goes to great lengths to protect consumers from counterfeits of its products. It utilizes both internal and external resources to combat counterfeits, piracy, and distribution abuse. This includes working with law enforcement authorities around the world, creating an online website for consumers to report counterfeit products to 3M, employing trained internal staff who consistently monitor online and physical retail sites around the world for IP infringements and counterfeit sellers. 3M also works with a third-party brand protection service vendor on the detection and removal of product listings that violate 3M's IP rights. As part of its anti-counterfeiting efforts for disposable 3M respirators, 3M has successfully secured the removal of more than 39,000 e-commerce offerings for fraudulent or counterfeit products from online marketplaces around the world, more than 32,200 false or deceptive social media posts, and more than 420 deceptive internet addresses. Moreover, 3M has been successful in a number of lawsuits in obtaining injunctive relief against the sellers of counterfeit 3M products over the past few years. 3M's brand protection efforts for its Littmann brand have resulted in the removal of thousands of product listings from e-commerce and social media sites, the removal of infringing domain names, and successful raids involving a large volume of counterfeit Littmann stethoscopes.

26. 3M is currently enrolled in Amazon Brand Registry and Project Zero.

### C. Defendants Created an Amazon Selling Account and Agreed Not to Sell Counterfeit Goods

27. Defendants controlled and operated the Amazon Selling Account detailed in **Schedule 2**, through which they sought to advertise, market, sell, and distribute counterfeit 3M products. In connection with that Selling Account, Defendants provided a name, email address, and banking information for the account. On information and belief, Defendants took active steps to mislead Amazon and conceal their true locations and identities by providing false information.

28. To become a third-party seller in the Amazon Store, sellers are required to agree to the BSA, which governs the applicant's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. A true and correct copy of the applicable version of the BSA, namely, the version Defendants last agreed to when using Amazon's services, is attached as **Exhibit B**.

29. Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of Amazon's policies, reserving the right to withhold payments and terminate the account of any seller who engages in such conduct. Ex. B, ¶¶ 2-3. The BSA requires the seller to defend, indemnify, and hold harmless Amazon against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

30. Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.
- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]

- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfilment centers, and other legal consequences.

*Id.*

31. Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store together with the consequences of doing so:

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:
    - Bootlegs, fakes, or pirated copies of products or content
    - Products that have been illegally replicated, reproduced, or manufactured
    - Products that infringe another party's intellectual property rights

- Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.

- Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.

- Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:
    - Remove suspect listings.
    - Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have

> product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

32. When they registered as third-party sellers in the Amazon Store, and established their Selling Account, Defendants agreed not to advertise, market, offer, sell, or distribute counterfeit products.

### D. Defendants' Sale of Counterfeit 3M Products

33. Defendants advertised, marketed, offered, and sold 3M-branded products in the Amazon Store. 3M has reviewed physical samples and/or images of the 3M-branded products sold by Defendants' Amazon Selling Account and confirmed that the products are inauthentic and bear counterfeits of one or more of the 3M Trademarks, and that 3M has never authorized the sale of such products. Counterfeit 3M-branded products sold by each Defendant are identified and described in **Schedule 2**.

### E. Amazon and 3M Shut Down Defendants' Account

34. By selling counterfeit 3M products, Defendants falsely represented to Amazon and its customers that the products Defendants sold were genuine products made by 3M. Defendants also knowingly and willfully used 3M's IP in connection with the advertisement, marketing, distribution, offering for sale, and sale of counterfeit 3M products.

35. At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store. Defendants have deceived Amazon's customers and Amazon, infringed and misused the IP rights of 3M, harmed the integrity of and customer trust in the Amazon Store, and tarnished Amazon's and 3M's brands.

36. Amazon, after receiving notice from 3M, verified Defendants' unlawful sale of counterfeit 3M products and blocked Defendants' Selling Account. In doing so, Amazon exercised its rights under the BSA to protect customers and the reputations of Amazon and 3M.

37. Pursuant to Amazon's A-to-z guarantee, Amazon also proactively issued full refunds to customers who purchased purported 3M products from Defendants. Defendants have not reimbursed Amazon.

## V.   CLAIMS

### FIRST CLAIM
*(by 3M against all Defendants)*
**Trademark Infringement – 15 U.S.C. § 1114**

38. Plaintiff 3M incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

39. Defendants' activities constitute infringement of the 3M Trademarks as described in the paragraphs above.

40. 3M advertises, markets, offers, and sells its products using the 3M Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

41. Because of 3M's long, continuous, and exclusive use of the 3M Trademarks identified in this Complaint, the trademarks have come to mean, and are understood by customers and the public to signify, products from 3M.

42. Defendants unlawfully advertised, marketed, offered, and sold products bearing counterfeit versions of the 3M Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by 3M and likely caused such erroneous customer beliefs.

43. As a result of Defendants' wrongful conduct, 3M is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, 3M is entitled to statutory damages under 15 U.S.C. § 1117(c).

44. 3M is further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in Defendants' possession. 3M has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the 3M Trademarks are unique and valuable properties that have no readily determinable market value; (b) Defendants' infringement constitutes harm to 3M and 3M's reputation and goodwill such that 3M could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to 3M, is likely to be continuing.

**SECOND CLAIM**
*(by 3M against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

45. Plaintiff 3M incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

46. 3M owns the 3M Trademarks and advertises, markets, offers, and sells its products using those trademarks described above and uses the trademarks to distinguish its products from the products and related items of others in the same or related fields.

47. Because of 3M's long, continuous, and exclusive use of the 3M Trademarks, they have come to mean, and are understood by customers, end users, and the public, to signify products from 3M.

48. Defendants' wrongful conduct includes the infringement of the 3M Trademarks in connection with Defendants' commercial advertising or promotion, and offering for sale and sale of counterfeit 3M products in interstate commerce.

49. In advertising, marketing, offering, and selling products bearing counterfeit versions of the 3M Trademarks, Defendants have used, and on information and belief, continue to use, the trademarks referenced above to compete unfairly with 3M and to deceive customers. Upon information and belief, Defendants' wrongful conduct misleads and confuses customers and the public as to the origin and authenticity of the goods and services advertised, marketed,

offered, or sold in connection with the 3M Trademarks and wrongfully trades upon 3M's goodwill and business reputation.

50. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by 3M, all in violation of 15 U.S.C. § 1125(a)(1)(A).

51. Defendants' conduct also constitutes willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

52. 3M is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below. Defendants' acts have caused irreparable injury to 3M, that, on information and belief, is continuing. An award of monetary damages cannot fully compensate 3M for its injuries, and 3M lacks an adequate remedy at law.

53. 3M is further entitled to recover Defendants' profits, 3M's damages for its losses, and 3M's costs to investigate and remediate Defendants' conduct and bring this action, including its attorney's fees, in an amount to be determined. 3M is also entitled to the trebling of any damages award as allowed by law.

### THIRD CLAIM
*(by Amazon against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

54. Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

55. Amazon's reputation for trustworthiness is at the heart of its relationship with customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon Store.

56. Specifically, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, and selling, in direct and

willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

57. In advertising, marketing, offering, and selling counterfeit 3M products in the Amazon Store, Defendants made false and misleading statements of fact about the origin, sponsorship, or approval of those products in violation of 15 U.S.C. § 1125(a)(1)(A).

58. Defendants' acts also constitute willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

59. As described above, Defendants, through their illegal acts, have willfully deceived Amazon and its customers, jeopardized the trust that customers place in the Amazon Store, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish seller accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

60. Amazon is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in bringing this lawsuit.

### FOURTH CLAIM
*(by 3M and Amazon against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

61. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

62. Defendants' advertising, marketing, offering, and sale of counterfeit 3M products constitutes an unfair method of competition and unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

63. Defendants' advertising, marketing, offering, and sale of counterfeit 3M products harms the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

64. Defendants' advertising, marketing, offering, and sale of counterfeit 3M products directly and proximately causes harm to and tarnishes Plaintiffs' reputations and brands, and damages their business and property interests and rights.

65. Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover their attorney's fees and costs. 3M further seeks to recover its actual damages, trebled.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with them, from:

   (i) selling products in Amazon's stores;

   (ii) selling products to Amazon or any affiliate;

   (iii) opening or attempting to open any Amazon selling accounts;

   (iv) manufacturing, distributing, offering to sell, or selling any product using 3M's brand or 3M's trademarks, or which otherwise infringes 3M's IP, on any platform or in any medium;

   (v) assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iv) above;

B. That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C. That the Court enter an order pursuant to 15 U.S.C. § 1116 impounding and permitting destruction of all counterfeit and infringing products bearing the 3M Trademarks or that otherwise infringe 3M's IP, and any related materials, including business records and materials used to reproduce any infringing products, in Defendants' possession or under their control;

D. That the Court enter an order requiring Defendants to provide 3M a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

E. That Defendants be required to pay all general, special, and actual damages which 3M has sustained, or will sustain as a consequence of Defendants' unlawful acts, together with 3M's statutory damages, and that 3M's damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(b), RCW 19.86.020, or otherwise allowed by law;

F. That Defendants be ordered to pay the maximum amount of prejudgment interest authorized by law;

G. That Defendants be required to pay the costs of this action and Plaintiffs' reasonable attorney's fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

H. That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

I. That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

DATED this 22nd day of July, 2022.

        DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*

By *s/ Scott R. Commerson*
Scott R. Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

*s/ Lauren Rainwater*
Lauren Rainwater, WSBA #43625
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1604
Tel: (206) 622-3150
Fax: (206) 757-7700
Email: laurenrainwater@dwt.com

## SCHEDULE 2

**DEFENDANT 1:**

Seller Account Name: Abeytube
Dates of Sales of Infringing Products: February 25, 2019 – February 28, 2019

| Purported Product | Confirmation of Counterfeit |
|---|---|
| 3M Littmann Classic III Stethoscope<br><br>ASIN[1]: B0116PRNRK<br><br>Infringed Registrations: 3,398,329; 2,097,659; 2,097,658; 0,751,809; 2,683,822; 2,681,330; 1,568,178; 3,728,353; 5,045,735 | • On or about October 19, 2021, Amazon sent images to 3M of an example of the product sold by Seller.<br><br>• 3M reviewed the images of the product and confirmed that the item was counterfeit based on deviations from 3M's authentic product and packaging. |

---

[1] ASIN is an abbreviation of "Amazon Standard Identification Number," which is a unique series of ten alphanumeric characters that is assigned to each product listed for sale in Amazon's stores for identification purposes.