The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability company; and 3M COMPANY, a Delaware corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>INDIVIDUALS AND ENTITIES DOING BUSINESS AS THE AMAZON SELLING ACCOUNTS IDENTIFIED IN SCHEDULE 2; and DOES 1-10,<br><br>    Defendants. | No. 2:22-cv-01019-RSL<br><br>Consolidated Cases:<br>*No. 2:22-cv-01020*<br>*No. 2:22-cv-01021*<br><br>**PLAINTIFFS'** ***EX PARTE*** **MOTION FOR EXPEDITED DISCOVERY**<br><br>*WITHOUT ORAL ARGUMENT*<br><br>NOTE ON MOTION CALENDAR: MARCH 1, 2023 |

### I.   INTRODUCTION AND RELIEF REQUESTED

Plaintiffs Amazon.com, Inc., Amazon.com Services LLC (collectively, "Amazon") and 3M Company ("3M," and with Amazon, "Plaintiffs") respectfully move the Court for leave to serve third-party subpoenas prior to the Rule 26(f) conference in order to discover information regarding the true locations and identities of Defendants[1] and other bad actors involved in their counterfeiting scheme. In connection with their scheme, Defendants submitted fraudulent documents and information, including falsified government IDs and payment information, when

---

[1] This Motion covers Defendants in the following consolidated cases: No. 2:22-cv-01019-RSL (the "Schedule 2 Action"); No. 2:22-cv-01020-RSL (the "Schedule 1 Action"); and No. 2:22-cv-01021-RSL (the "Schedule 3 Action").

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 1
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

they registered selling accounts in the Amazon.com store (the "Amazon Store"). Plaintiffs seek leave to serve subpoenas on specified email providers, payment service providers, and banks that are linked to Defendants' counterfeiting scheme. Without this expedited discovery, Plaintiffs cannot obtain crucial information about the true identities and locations of Defendants in order to identify and serve them, and Plaintiffs will be left without a means to recover for Defendants' harm.

## II.   BACKGROUND

### A.   Amazon's Efforts to Prevent, Detect, and Enforce Against Counterfeits.

Amazon offers third-party sellers and brand owners the ability to sell products in Amazon's stores by registering a selling account. Declaration of Elaine Haskel ("Haskel Decl.") ¶ 3. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit and infringing goods from being sold in its stores. *Id.* In 2021 alone, Amazon invested over $900 million and employed more than 12,000 people to protect its stores from fraud and abuse. *Id.* Amazon invests these resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon or from a third-party seller—customers receive authentic products made by the true manufacturer of those products. *Id.*

Amazon employs a three-pronged approach in its mission to drive counterfeits to zero: (1) prevention, including the use of robust proactive controls to prevent the sale of counterfeit products; (2) detection, including the use of powerful tools to detect infringing product listings; and (3) enforcement, including bringing actions like this one to hold bad actors accountable. *Id.* ¶ 4. First, Amazon's prevention prong includes robust seller verification processes, deploying industry-leading technology to analyze hundreds of unique data points and robust processes to verify information provided by potential sellers. *Id.* ¶ 5. In 2021, Amazon prevented over 2.5 million attempts to create new selling accounts, stopping bad actors before they published a single product for sale. *Id*. Amazon is also constantly innovating on these tools and systems. *Id*. For example, Amazon now requires prospective sellers in Amazon's stores to have one-on-one

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 2
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

conversations with one of its team members to verify the seller's identity and documentation, and Amazon also separately verifies the seller's physical location and payment instruments. *Id*. Amazon also leverages machine learning models that use hundreds of data points about the prospective seller to detect risk, including relations to previously-enforced bad actors. *Id*. Amazon also recently launched a program that re-verifies existing selling accounts. *Id.* As part of this program, Amazon is re-verifying and validating the business addresses of selling accounts that are flagged based on risk factors, such as complaints from brands. *Id.* These measures have made it more difficult for bad actors to hide.

Second, Amazon's detection prong employs various automated brand protection tools, which allow intellectual property owners to quickly report suspected counterfeit products to Amazon. *Id.* ¶ 6. For example, in 2017, Amazon launched the Amazon Brand Registry, a free service to any rights owner with a government-registered trademark, regardless of the brand's relationship with Amazon. *Id.* Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. *Id.* Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and report potentially infringing products using state-of-the-art image search technology. *Id.* More than 700,000 brands are enrolled in Brand Registry, and those brands are finding and reporting 99% fewer suspected infringements since joining Brand Registry. *Id.*

Third, Amazon seeks to hold bad actors accountable through its enforcement prong. *Id.* ¶ 7. In 2020, Amazon formed the Counterfeit Crimes Unit ("CCU"), a global team comprised of former prosecutors, former law enforcement agents, civil litigators, and data analysts who use internal data and external investigative techniques to pursue bad actors engaged in the sale and promotion of counterfeit or infringing products. *Id.* The CCU works with outside counsel to file civil enforcement actions against bad actors, often jointly with brand owners whose intellectual property rights have been infringed, such as in the present case. Declaration of Scott Commerson ("Commerson Decl.") ¶ 2. The CCU also refers bad actors to law enforcement agencies located in the U.S. and abroad. *Id.* Amazon and brand owners have obtained third-party discovery

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 3
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

through their joint actions that has led to concrete action against bad actors. *Id.* For example, discovery in one such action revealed the counterfeiters' true identities, and Amazon and the brand owner then used that information to support a criminal referral to law enforcement in China. *Id.* The referral, in turn, resulted in a successful raid and the confiscation of hundreds of counterfeit products from a warehouse in China. *Id.*

In another joint action, Amazon and a brand owner used information that they received in civil discovery to identify a counterfeiting ring. *Id.* ¶ 3. They then referred that ring to federal law enforcement in the U.S., which is actively investigating the counterfeiters' conduct. *Id.* And in multiple other joint actions, Amazon and brand owners have used third-party discovery to identify the bad actors responsible for counterfeit schemes, and have amended the pleadings to pursue judgment against these defendants. *Id.* In this Motion, Plaintiffs similarly seek to use expedited discovery to identify and locate the bad actors responsible for the counterfeiting activity at issue.

### B. Defendants' Illegal Conduct

Here, Defendants used sixty-one (61) different selling accounts (the "Selling Accounts")[2] as part of a coordinated counterfeiting ring to advertise and sell counterfeit 3M-branded stethoscopes in violation of 3M's intellectual property rights, and in direct contravention of Amazon's anti-counterfeiting terms and policies. *See* Schedule 1 Action Compl. (Dkt. 1), Schedule 2 Action Compl. (Dkt. 1), and Schedule 3 Action Compl. (Dkt. 1), ¶¶ 28-32; *id.* Ex. B ¶ 5 & Ex. C at 1–2. Amazon and 3M identified these bad actors, Amazon blocked them from

---

[2] The Selling Accounts did business in the Amazon Store under the following names: 1) Vinecre Onse; 2) Ceeoty Atoxe; 3) Barry Company; 4) Paksa Store; 5) Clara Wholesale; 6) Mardiou US; 7) Welpance LLC; 8) Meceiall Store; 9) Jeffrey Crof; 10) Vincent Health; 11) Billy Business; 12) Elivera Counly; 13) Willie Holland; 14) Kingery Store; 15) Lopains Veen; 16) Easrscope Store; 17) Hubert Moss; 18) Aivaeso Redicol; 19) Kebetty Store; 20) Anthons Store; 21) Alvinste Store; 22) Sunica Store; 23) David Factory; 24) Rimas Store; 25) Roger Store; 26) Yoceiky Store; 27) Tammly Store; 28) Mooky Store; 29) Hsiguans LLC; 30) Greg Trade; 31) Annette A. Smith LLC; 32) Qcrowe US; 33) EEG Ventures LLC; 34) Sherry Online; 35) Osagele US; 36) PingPing LLC; 37) Dean Tech; 38) Gretna Mart LLC; 39) Chester Supply; 40) Heaitman Store; 41) Lvetown; 42) Tedabe Store; 43) Rahul Epert LLC; 44) Tanyaer Store; 45) Eceit Resod; 46) Hittmedical LLC; 47) Scott Center; 48) ONZO Shop; 49) Chris Skamp; 50) Maitler Store; 51) John Centers; 52) Moacrdx Store; 53) Soeucelo Store; 54) Srencpeos Store; 55) Slack's Shop; 56) Abeytube; 57) Souteo Store; 58) Luvoice; 59) Brownartic Store; 60) Keith Supplies; and 61) KTPOA US. *See* Compls., Schedules 1-3.

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 4
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

selling in the Amazon Store, and Amazon and 3M are now pursuing this external enforcement action against those bad actors through this lawsuit.

Through their illegal actions, Defendants willfully deceived Plaintiffs and their customers, infringed 3M's intellectual property rights, tarnished 3M's and Amazon's brands, harmed the integrity of the Amazon Store, and damaged Amazon's and 3M's customers. Schedule 1 Action Compl. (Dkt. 1), Schedule 2 Action Compl. (Dkt. 1), and Schedule 3 Action Compl. (Dkt. 1) ¶¶ 5-6. Defendants' actions constitute trademark infringement under the Lanham Act, 15 U.S.C. § 1114, false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1125, and unfair and deceptive acts under the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*, for which Plaintiffs seek damages, equitable relief, and their costs and attorneys' fees. Schedule 1 Action Compl. (Dkt. 1), Schedule 2 Action Compl. (Dkt. 1), and Schedule 3 Action Compl. (Dkt. 1) ¶¶ 38-65.

### C. Plaintiffs' Diligent Attempts to Locate Defendants

Despite Amazon's efforts, a small number of bad actors attempt to circumvent Amazon's systems by submitting fraudulent and deliberately false information to Amazon, as Defendants did here. Plaintiffs have made substantial, ongoing attempts to identify and locate Defendants, without success. When registering their Selling Accounts, Defendants provided names, identifying documents, email addresses, and banking information for each Account. Haskel Decl. ¶ 8. Plaintiffs believe Defendants deliberately provided Amazon with false information and forged documents in an attempt to mislead Amazon as to their true identities and locations. Commerson Decl. ¶ 4.

For example, Defendants responsible for the Rahul Ebert LLC, Roger Store, and Tammly Store Selling Accounts each provided Amazon with identification cards or drivers' licenses issued in the United States or United Kingdom. Haskel Decl. ¶ 9. While each of these documents appears valid on its face, Plaintiffs were not able to locate the persons purportedly identified by these documents despite using both public records and Open Source searches. *Id*. As a result,

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 5
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Plaintiffs determined that these Defendants attempted to conceal their identities from Amazon by submitting falsified government documents when registering their Selling Accounts. *Id.*

Furthermore, Defendants provided Amazon with a Plainview, New York address and the name "Jason Fa" in connection with forty-three (43) Selling Accounts. *Id.* ¶ 10. In order to substantiate this information, Defendants also provided Amazon with information for a credit card in Mr. Fa's name, registered to the same Plainview address. *Id*. However, Plaintiffs' investigation has not located anyone in Plainview matching Mr. Fa's name and contact information. Commerson Decl. ¶ 5. Further, while this Plainview address is home to a number of businesses, Plaintiffs' investigation revealed that none appear to be linked to Defendants' counterfeiting scheme. *Id*. Based on the foregoing, Plaintiffs believe Defendants provided Amazon with falsified contact and credit card information, in addition to forged identification documents discussed above. *Id*.

Finally, Plaintiffs' investigation has determined that while Defendants provided Amazon with a United States address for each of the sixty-one (61) Selling Accounts, Defendants did not access roughly half of these Accounts from any United States IP addresses. Haskel Decl. ¶ 11. Instead, Defendants accessed these Accounts exclusively from IP addresses tracing back to China. *Id*. Based on the foregoing, and given the coordinated nature of this counterfeiting ring, Plaintiffs believe the persons responsible for the majority—if not all—of the Selling Accounts reside at unknown locations in China and provided Amazon with falsified documents, banking, and contact information when they registered those Selling Accounts. Commerson Decl. ¶¶ 4, 6. Hence, Defendants' exact location and true identities remain unknown. *Id*.

Plaintiffs now seek expedited discovery to uncover the true identities and locations of Defendants and other bad actors involved in their counterfeiting scheme. As set forth below, Plaintiffs respectfully request that the Court authorize expedited discovery through subpoenas duces tecum directed to Payoneer Inc. ("Payoneer"); Citigroup Inc. ("Citibank"); Wells Fargo Bank, N.A. ("Wells Fargo"); Microsoft Corporation ("Microsoft"); Yahoo Inc. ("Yahoo"); and Verizon Media – Oath ("Verizon").

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 6
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

**D.      Plaintiffs' Investigation of Defendants**

**1.      Third Party Bank Accounts**

Through their investigation, Plaintiffs have determined that Defendants responsible for the following Selling Accounts maintained virtual bank accounts with Payoneer, and used them to receive and transfer funds related to their sales in the Amazon Store: Vinecre Onse; Ceeoty Atoxe; Barry Company; Paksa Store; Clara Wholesale; Mardiou US; Welpance LLC; Meceiall Store; Jeffrey Crof; Vincent Health; Billy Business; Elivera Counly; Willie Holland; Kingery Store; Lopains Veen; Easrscope Store; Hubert Moss; Aivaeso Redicol; Kebetty Store; Anthons Store; Alvinste Store; Sunica Store; David Factory; Rimas Store; Roger Store; Yoceiky Store; Tammly Store; Mooky Store; Hsiguans LLC; Greg Trade; Annette A. Smith LLC; Qcrowe US; EEG Ventures LLC; Sherry Online; Osagele US; PingPing LLC; Dean Tech; Gretna Mart LLC; Chester Supply; Heaitman Store; Lvetown; Tedabe Store; Rahul Epert LLC; Tanyaer Store. Haskel Decl. ¶ 12.

Defendants responsible for the following Selling Accounts maintained bank accounts with Citibank, and used them to receive and transfer funds related to their sales in the Amazon Store: Eceit Resod; Hittmedical LLC; Scott Center; John Centers. *Id.* ¶ 13.

Finally, Defendants responsible for the following Selling Accounts maintained bank accounts with Wells Fargo, and likewise used them to receive and transfer funds related to their sales in the Amazon Store: Maitler Store; Chris Skamp; ONZO Shop; Moacrdx Store; Soeucelo Store; Srencpeos Store; Slack's Shop; Abeytube; Souteo Store; Luvoice; Brownartic Store; Keith Supplies; KTPOA US. *Id.* ¶ 14.

In cases presenting similar facts, courts have granted plaintiffs' requests to issue subpoenas to payment service providers for financial records associated with defendants' selling accounts, and these records assisted plaintiffs in uncovering the defendants' true identities. *See, e.g., Amazon.com, Inc. v. Yong*, 2021 WL 1237863, at *2 (W.D. Wash. Apr. 2, 2021) (granting plaintiffs' motion for expedited discovery); *Amazon.com v. Yong*, 2:21-cv-00170-RSM, Dkt. 28 (amended complaint identifying additional defendant based on Payoneer data). Here, the

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 7
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

financial records will set forth the names and locations of the bank account holders associated with Defendants' Selling Accounts, as well as deposits and withdrawals of funds to and from such bank accounts. Commerson Decl. ¶¶ 7-8.

### 2. Email Providers

Plaintiffs' investigation has also uncovered the email service providers used by Defendants and provided to Amazon when registering the Selling Accounts. The domain for the email addresses that the Hittmedical LLC; Brownartic Store; and David Factory defendants provided to Amazon is @outlook.com, an e-mail service operated by Microsoft. Haskel Decl. ¶ 15; Commerson Decl. ¶ 9.

The domain for the email addresses that the Keith Supplies and Hsiguans LLC defendants provided to Amazon is @hotmail.com, also an e-mail service operated by Microsoft. Haskel Decl. ¶ 16; Commerson Decl. ¶ 9.

The domain for the email addresses that the ONZO Shop; Welpance LLC; Hubert Moss; Willie Holland; Rahul Ebert LLC; PingPing LLC; Chester Supply, EEG Ventures LLC; Annette A. Smith LLC; Greg Trade; Gretna Mart LLC; Kingery Store; Vincent Health; and Chris Skamp defendants provided to Amazon is @yahoo.com, an e-mail service operated by Yahoo. Haskel Decl. ¶ 17; Commerson Decl. ¶ 9.

The domain for the email address that the Paksa Store defendants provided to Amazon is @aol.com, an e-mail service operated by Verizon. Haskel Decl. ¶ 18; Commerson Decl. ¶ 9.

In cases presenting similar facts, courts have granted plaintiffs' request to issue subpoenas to email service providers such as Microsoft for records concerning the email addresses used by bad actors to control and operate their selling accounts as well as communicate with Amazon. *See Yong*, 2021 WL 1237863, at *2; *Amazon.com, Inc. v. Ackary*, 2022 WL 1027710, at *2 (W.D. Wash. Apr. 6, 2022). Here, records from the above email service providers will likely demonstrate, among other things, the names and contact information Defendants used to register their email accounts, and the IP addresses from which Defendants

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 8
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

logged into those accounts, which can be used to help determine Defendants' locations. Commerson Decl. ¶ 9.

### E. Requested Discovery

Plaintiffs seek expedited discovery through third-party document subpoenas to the aforementioned payment service provider, banks, and email service providers linked to Defendants' Selling Accounts. Due to Defendants' use of fraudulent documents and information when registering their Selling Accounts, Plaintiffs need this discovery to locate and serve Defendants, and ultimately recover for Defendants' wrongful conduct.

The subpoenas will be narrowly targeted to seek documents regarding the identities and locations of Defendants and their accomplices. *Id.* ¶ 10. The subpoenas are intended to uncover crucial information about Defendants' counterfeiting operation and the individuals behind it, both known and unknown. *Id.* Because Plaintiffs' proposed expedited discovery is focused, both in scope and as to the third parties Plaintiffs wish to serve, the request is targeted to accomplish the goals authorized by law as set forth below. Accordingly, Plaintiffs respectfully request that the Court authorize expedited discovery through third-party subpoenas relating to the parties, allegations, and claims in this case.

### III.  ARGUMENT

#### A. The Court Should Authorize Early Discovery to Locate Defendants and to Help Uncover Those Involved in Their Counterfeiting Scheme

Federal Rule of Civil Procedure 26 provides that a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Fed. R. Civ. P. 26(d)(1). Although the Ninth Circuit has not directly defined the standard for allowing expedited discovery, "courts in this jurisdiction require that the moving party demonstrate that 'good cause' exists to deviate from the standard pretrial schedule." *Music Grp. Macao Commercial Offshore Ltd. v. John Does I–IX*, 2014 WL 11010724, at *1 (W.D. Wash. July 18, 2014) (Martinez, J.); *Microsoft Corp. v. Mai*, 2009 WL

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 9
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1393750, at *5 (W.D. Wash. May 15, 2009) (Jones, J.); *Renaud v. Gillick*, 2007 WL 98465, at *2 (W.D. Wash. Jan. 8, 2007) (Lasnik, J.).

"Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Microsoft Corp.*, 2009 WL 1393750, at *5 (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)). Courts routinely allow early discovery where it will "substantially contribute to moving th[e] case forward" and is "narrowly tailored" for that purpose. *Semitool*, 208 F.R.D. at 277. The relevant factors in assessing good cause are the requesting party's diligence, its intent in seeking the requested information, and whether the opposing party will be prejudiced if the Court grants the motion. *See Renaud*, 2007 WL 98465, at *3; *Music Grp.*, 2014 WL 11010724, at *1–2. Here, each factor supports granting Plaintiffs' motion.

### 1. Plaintiffs' Diligence

Plaintiffs have diligently attempted to uncover the identities and locations of Defendants. Plaintiffs have attempted to uncover Defendants' identities and locations by: (1) engaging private investigators (Commerson Decl. ¶ 4); (2) investigating and examining the information Defendants provided to Amazon when creating their Selling Accounts (*id.*; Haskel Decl. ¶¶ 8-18); and (3) searching both public records and specialized investigative databases for the names, entities, and addresses provided by Defendants in connection with their Selling Accounts (*id*). Despite these extensive efforts, Plaintiffs have been unable to uncover Defendants' true identities or current whereabouts; instead, Plaintiffs determined that Defendants provided Amazon with fraudulent government documents, contact, and banking information when registering their Selling Accounts. Commerson Decl. ¶¶ 4-6.

Accordingly, this factor supports granting Plaintiffs leave to conduct expedited discovery.

### 2. Plaintiffs' Intent

Plaintiffs seek information about the true location and identities of Defendants and the bad actors involved in their counterfeiting scheme. *Id*. ¶¶ 7-10. Plaintiffs seek information to hold Defendants and their conspirators legally accountable for their misconduct. For instance,

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 10
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Plaintiffs seek information from Payoneer, the payment service provider used by the majority of Defendants, regarding the financial transactions behind the counterfeiting scheme. *Id*. ¶ 7. Likewise, discovery into the several other financial institutions associated with the Selling Accounts will help Plaintiffs identify the bad actors' true identities and trace the illicit proceeds obtained from their scheme. *Id*. ¶ 8. In addition, discovery from Defendants' email service providers may demonstrate, among other things, the contact information used to register their accounts and the IP addresses from which Defendants logged into those accounts, which can be used to help determine Defendants' locations. *Id.* ¶ 9. In short, Plaintiffs reasonably believe that limited expedited discovery of these third parties will help Plaintiffs achieve these goals and advance litigation.

Because Plaintiffs' intent is to "advance the litigation and save judicial resources," *Renaud*, 2007 WL 98465, at *3, this factor supports granting Plaintiffs leave to conduct expedited discovery.

### 3. Prejudice to Defendants

Defendants will suffer no cognizable prejudice if Plaintiffs are granted leave to conduct expedited discovery. Plaintiffs' request for expedited discovery is narrowly tailored to include only the information necessary to identify and locate the persons and/or entities propagating an illegal campaign that harmed Plaintiffs and their customers. The requested discovery is also directed at non-parties, not Defendants. Granting "third party document requests will not impose a significant burden upon [D]efendant[s]." *Renaud*, 2007 WL 98465, at *3.

Finally, Defendants cannot credibly claim prejudice arising from a Motion necessitated by their own conduct. Defendants chose to register their Selling Accounts using fraudulent documents and falsified information in a deliberate attempt to conceal from Amazon their identities and whereabouts. Commerson Decl. ¶¶ 4-6. Had they not done so, and instead provided Amazon with accurate contact information, including physical addresses for service of process, this Motion would be unnecessary. Defendants should not be rewarded for their misconduct, and they will suffer no cognizable prejudice if the Court grants Plaintiffs' Motion.

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 11
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant leave, prior to the Rule 26(f) conference, to serve Rule 45 subpoenas to obtain information from the aforementioned payment service provider, banks, and email service providers—all of which are linked with the Defendants and their counterfeiting scheme. This information is critical to Plaintiffs' ability to locate and serve Defendants and to advance this litigation. Plaintiffs may request leave to serve additional Rule 45 subpoenas on any other companies or individuals to the extent they are identified in subpoena responses as having responsive information for the limited purpose of identifying and locating Defendants and other bad actors responsible for the counterfeiting scheme alleged in the Complaint.

DATED this 1st day of March, 2023.

*I certify that this memorandum contains 3,407 words, in compliance with the Court's Order permitting an over-length brief.  See Dkt. 14.*

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*

s/ Scott R. Commerson
Scott R. Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

s/ Lauren B. Rainwater
Lauren B. Rainwater, WSBA #43625
920 Fifth Avenue, Suite 3300
Seattle WA 98104-1604
Tel: (206) 622-3150
Fax: (206) 757-7700
Email: laurenrainwater@dwt.com

PLAINTIFFS' *EX PARTE* MOTION FOR EXPEDITED DISCOVERY - 12
(No. 2:22-cv-01019-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax