1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

AMAZON TECHNOLOGIES INC., et al.,

CASE NO. 2:22-cv-01019-RSL

9

Plaintiffs,

ORDER DIRECTING ENTRY

10

v.

OF JUDGMENT AND
PERMANENT INJUNCTION

BIBO FANG, et al.,

11

Defendants.

12
13      This is an action for damages and injunctive relief for trademark infringement and related

14 claims involving counterfeit 3M products sold under the 3M, Littman, L, Classic III, Cardiology

15 IV, and Master Cardiology trademarks. This matter comes before the Court on "Plaintiffs' *Ex*

16 *Parte* Motion for Default Judgment and Permanent Injunction" against defendants Bibo Fang,

17 Feng Xia Fang, Jun Wei Liang, Jun Yi Liang, Xiao Liang, and Zhi Chng Liang (collectively,

18 "defendants"). Dkt. # 39. Defendants have not appeared, and their defaults were entered on

19 January 18, 2024. Dkt. # 36. Having reviewed the motion, the supporting declarations, the

20 remaining record, and the applicable law, the Court finds as follows:

21                              **BACKGROUND**

22      In recent months, the Western District of Washington has seen "numerous cases brought

23 by Amazon.com, Inc. and Amazon.com Services, LLC, together with other intellectual property

24 owners, against third parties allegedly facilitating the sale of counterfeit products in the

Amazon.com store." General Order 03-23, at 1 (Mar. 7, 2023). The cases are referred to collectively as the "Counterfeit Enforcement Actions." *Id.* This is one of those cases.

The motion currently pending before the Court is the latest in a series of recent motions for default judgment by Amazon Plaintiffs and/or its selling partners that have been handled by courts in this District. *See, e.g.*, *Amazon.com v. Kitsenka*, C22-1574RSL (W.D. Wash. June 20, 2024); *Amazon Techs., Inc. v. Qiang*, C23-1060TL, 2024 WL 1606109 (W.D. Wash. Apr. 12, 2024); *Amazon.com, Inc. v. Dong*, C23-0159TL, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024); *Amazon.com, Inc. v. Wong*, No. C19-0990JLR, 2024 WL 553695 (W.D. Wash. Feb. 12, 2024); *Amazon.com, Inc. v. Dai*, No. C21-0170RSM, 2023 WL 6233835 (W.D. Wash. Sept. 26, 2023); *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217RSL, 2022 WL 19000499 (W.D. Wash. Oct. 3, 2022); *Amazon.com, Inc. v. White*, No. C20-1773JHC, 2022 WL 1641423 (W.D. Wash. May 24, 2022); *see also Amazon.com v. Kurth*, No. C18-0353RAJ, 2019 WL 3426064 (W.D. Wash. July 30, 2019).

Beginning in June 2017, defendants established, controlled, and operated sixty-one selling accounts in the Amazon on-line store. Dkt. No. 26 ¶ 33. To become third-party sellers in the Amazon store, defendants were required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs the seller's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon store. Dkt. No. 26 ¶ 34. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of [its] obligations and exercise of [its] rights" under the BSA. *Id.*

Under the terms of the BSA, Amazon identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Dkt. No. 26 ¶ 35. The BSA requires the seller to defend, indemnify, and hold harmless

1   Amazon against any claims or losses arising from the seller's "actual or alleged infringement of

2   any Intellectual Property Rights." *Id.*

3        The BSA also incorporates Amazon's Anti-Counterfeiting Policy, which expressly

4   prohibits the sale of counterfeit goods in the Amazon store and describes Amazon's commitment

5   to preventing the sale and distribution of counterfeit goods in the Amazon Store as well as the

6   consequences of doing so. Dkt. No. 26 ¶¶ 36-37.

7        3M Company, a plaintiff in this litigation and the owner of the subject trademarks, has

8   examined the products sold by defendants and determined that the products are counterfeit and

9   bear a counterfeit 3M trademark or other indications of the brand. Dkt. No. 26 ¶ 41. Plaintiffs

10  allege that the defendants are the primary recipients of the proceeds of the counterfeit sales, they

11  share various common characteristics including family names, addresses, IP networks, and

12  logistics providers, and they use similar tactics to evade detection. Dkt. No. 26 ¶ 43.

13       After plaintiffs confirmed the counterfeit sales, Amazon blocked defendants' selling

14  accounts from further sales in the Amazon store. Dkt. No. 26 ¶ 46. Plaintiffs filed this lawsuit on

15  July 22, 2022. Dkt. No. 1. Following the Clerk's entry of default, plaintiffs filed this motion for

16  default judgment and permanent injunction.

17                              LEGAL STANDARD

18       A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616

19  F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

20  prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d

21  1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When

22  considering whether to exercise discretion to enter a default judgment, courts may consider a

23  variety of factors, including:

24       (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's

substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure.

*Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pled. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

## DISCUSSION

### A.   Jurisdiction

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1.  Subject Matter Jurisdiction

The Court finds that it has subject matter jurisdiction in this matter based on the assertion of federal claims for trademark counterfeiting and infringement and false designation of origin and false advertising. 15 U.S.C. §§ 1114, 1125(a); 28 U.S.C. §§ 1331, 1338. The Court also finds that it has supplemental jurisdiction over plaintiffs' state law claim under the Washington Consumer Protection Act ("CPA"). 28 U.S.C. §§ 1332, 1367.

#### 2.  Personal Jurisdiction

Washington's long-arm statute is coextensive with the reach of federal due process. RCW 4.28.180. Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant

1  must have "certain minimum contacts" with the relevant forum "such that the maintenance of the

2  suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

3  *Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). This means a "defendant's

4  conduct and connection with the forum State must be such that the defendant should reasonably

5  anticipate being haled into court there." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)

6  (internal quotation marks and citation omitted).

7        Accepting plaintiffs' allegations as true, the Court finds that it has personal jurisdiction

8  over defendants because they "affirmatively undertook to do business with Amazon, a

9  corporation with its principal place of business in Washington, and sold in the Amazon [s]tore

10  products bearing counterfeit versions of the 3M Trademarks . . . . [and] shipped products bearing

11  counterfeit versions of the 3M Trademarks to consumers in Washington." Dkt. No. 26 ¶ 18.

12  Transacting business with a Washington state company, conducting business through its sales

13  platform, reaching out to do business with Washington residents through that platform, and

14  selling counterfeit products to Washington residents reasonably submits defendants to the

15  jurisdiction of Washington courts. *Qiang*, 2024 WL 1606109, at *3-4 (Apr. 12, 2024); *Sirowl*

16  *Tech.*, 2022 WL 19000499, at *1. Further, plaintiffs' claims arose from these contacts with

17  Washington state. In addition, defendants "entered into an ongoing contractual relationship with

18  a Washington State company . . . and then violated that contractual relationship." *Dai*, 2023 WL

19  6233835, at *2.[1]

20  **B.  Default Judgment**

21        Having considered the *Eitel* factors and reviewed the record in this matter, the Court

22  finds that entry of default judgment is proper.

23

24  [1] The Court need not reach plaintiffs' alternative argument that personal jurisdiction exists under the forum selection clause in the BSA. *See* Dkt. No. 39 at 3.

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 5

1    **1. Prejudice to Plaintiffs**

2         Unless default judgment is entered, plaintiffs will be prejudiced. Plaintiffs have attempted

3    to litigate this case and vindicate their rights under federal and state law against defendants.

4    Despite being served, defendants have failed to appear or participate in this litigation. "Without

5    default judgment, [p]laintiffs will suffer prejudice because they will 'be denied the right to

6    judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*,

7    2024 WL 553695, at *3 (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.

8    Cal. 2005)). This factor favors entry of default judgment.

9    **2. Merits of Plaintiffs' Claims and Sufficiency of Complaint**

10        Taking the allegations in of the amended complaint as true, plaintiffs have sufficiently

11   pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d

12   1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these two *Eitel*

13   factors require plaintiffs to state a claim on which they can recover). The Court reviews each

14   claim in turn.

15        **a.      Claim One: Trademark Counterfeiting and Trademark Infringement**

16        3M has asserted a claim for trademark counterfeiting and infringement against

17   defendants. Dkt. No. 26 ¶§ 48-54. To prevail on a claim for trademark infringement under 15

18   U.S.C. § 1114, plaintiffs must show that defendants used:

19        (1) a reproduction, counterfeit, copy or colorable imitation of [its] registered
         trademark, (2) without its consent, (3) in commerce, (4) in connection with the
20       sale, offering for sale, distribution or advertising of any goods, (5) where such use
         is likely to cause confusion, or to cause a mistake or to deceive.

21   *Wong*, 2024 WL 553695, at *4 (quoting *Kurth*, 2019 WL 3426064, at *2). "Likelihood of

22   confusion exists when consumers viewing the mark would probably assume that the goods it

23   represents are associated with the source of a different product identified by a similar mark." *Id.*

24

1   (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir.

2   2005)). Courts generally evaluate eight factors to determine whether confusion is likely:

3         1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the
          similarity of the marks; 4) evidence of actual confusion; 5) the marketing
4         channels used; 6) the degree of care customers are likely to exercise in purchasing
          the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of
5         expansion into other markets.

6   *KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341,

7   348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both

8   within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Id.* (citing

9   *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash.

10  Sept. 25, 2013) (compiling cases)). A "counterfeit" is "a spurious mark which is identical with,

11  or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

12        Here, plaintiffs allege that 3M owns the Trademarks described in the Amended

13  Complaint. Dkt. No. 26 ¶ 50. Defendants advertised, marketed, offered, and sold, without

14  authorization, counterfeit products bearing the 3M Trademarks. Dkt. No. 26 ¶ 52. Accepting

15  these allegations as true, the Court finds that it is likely that a reasonable consumer would

16  confuse the products sold through the defendants' Selling Account in the Amazon Store with

17  genuine Oral-B products. Therefore, plaintiffs have stated a claim against defendants for

18  trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114. The second and

19  third *Eitel* factors weigh in favor of entry of default judgment on that claim.

20        **b.    Claims Two and Three: False Designation of Origin[2]**

21        Plaintiffs bring claims for false designation of origin against defendants under 15 U.S.C.

22  § 1125(a). Dkt. No. 29 ¶¶ 58–74. To state a claim for false designation of origin, plaintiffs must

23

24  ---

[2] Amazon is not seeking entry of default judgment on their false advertising claims and have agreed to voluntarily dismiss those claims without prejudice. Dkt. # 39 at 7 n.5.

allege that defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Wong*, 2024 WL 553695, at *5 (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015)). "Although [3M] is the trademark holder in this case and not [the Amazon plaintiffs], under § 1125(a), '"any person who believes that he or she is likely to be damaged" by a defendant's false advertising' may sue." *Dai*, 2023 WL 6233835, at *3 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

(1)     3M

3M alleges that defendants sold counterfeit 3M products bearing the 3M Trademarks through commercial advertising or promotion of their counterfeit products. Dkt. No. 26 ¶ 58. This unauthorized misuse of the 3M Trademarks allegedly deceived customers into believing that the products were authentic when they were actually counterfeit. *Id.* ¶ 59. The advertising, marketing, and selling of products bearing the counterfeit versions of the 3M Trademarks were used to compete unfairly with 3M (*id.*), resulting in damages, a claim for disgorgement of profits, and the need for injunctive relief (*id.* ¶¶ 62-63). 3M has stated a claim for false designation of origin. *See Wong*, 2024 553695, at *5 (holding the same); *White*, 2022 WL 1641423, at *3 (same).

(2)     Amazon

Amazon.com and Amazon Services allege that defendants deceived them about the authenticity of the products they were advertising, marketing, offering, and selling, in violation of the BSA and Amazon Plaintiffs' Anti-Counterfeiting Policies. Dkt. No. 26 ¶¶ 65-70. Defendants' acts allegedly undermine and jeopardize consumer trust in Amazon and the Amazon Store. *Id.* ¶ 69. Amazon.com and Amazon Services have stated a claim for false designation of

origin. *See Dai*, 2023 WL 6233835, at *3 (holding the same); *Sirowl Tech.*, 2022 WL 19000499, at *3 (same), *White*, 2022 WL 1641423, at *3 (same).

### c.   Claim Four: Violation of WCPA

Plaintiffs jointly bring a claim under the Washington Consumer Protection Act ("WCPA"). Dkt. No. 26 ¶¶ 72-75. To state a claim under the WCPA, plaintiffs must allege "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Dai*, 2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Id.* (quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)). Here, "[b]ecause analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, [p]laintiffs have already demonstrated the basis for their CPA claim." *Id.* The second and third *Eitel* factors weigh in favor of entry of default judgment on the WCPA claim.

### 3.   Factor Four: Sum of Money at Stake

Given the substantial sums that are at stake and the seriousness of the alleged misconduct, this factor favors entry of default judgment. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by

defendant's conduct") (internal citations and quotation omitted). The fourth *Eitel* factor weighs in favor of entry of default judgment.

### 4.     Factor Five: Possibility of Dispute of Material Facts

"When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212. Not only have defendants failed to appear in this action, but plaintiffs have provided detailed evidence in support of their claims that would be difficult to rebut. This factor favors entry of default judgment.

### 5.     Factor Six: Whether Default Is Due to Excusable Neglect

There is no evidence that defendants' failure to appear is due to excusable neglect. This factor favors entry of default judgment.

### 6.     Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of claims on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however, the policy favoring decisions on the merits is not dispositive." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7).

For all of the foregoing reasons, plaintiffs' motion for default judgment is GRANTED. Amazon's claim of false advertising is hereby DISMISSED without prejudice.

## C.     3M's Statutory Damages

"Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). A plaintiff may recover statutory damages

of not less than $1,000 or more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *7). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Id.* (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, 'is not entitled to a windfall.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *1). Because 3M has alleged the willful infringement and unlawful use of eleven of its Trademarks, the Court may award up to $22,000,000 in statutory damages.

3M seeks statutory damages in an amount equal to three times the aggregate sales of counterfeit products each Selling Account associated with one or more defendants sold. *See* Dkt. # 39 at 22-26. 3M's request is conservative, reasonable, and in line with other awards in this district. The Court therefore awards 3M the following amounts in statutory damages:

- $441,559 against defendant Feng Xia Fang for counterfeit sales from the Annette A. Smith LLC, Chester Supply, Dean Tech, EEG Ventures LLC, Greg Trade, Gretna Mart LLC, Hsiguans LLC, Osagele US, Qcrowe US, and Sherry Online Selling Accounts;

- $3,048,306 against defendant Jun Wei Liang for counterfeit sales from the Heaitman Store, Pingping LLC, Rahul Ebert LLC, Tanyaer Store, Abeytube, Brownartic Store, ECEIT RESOD, Hittmedical LLC, John Centers, Keith Supplies, KTPOA US, Luvoice, Maitler Store, Moacrdx Store, ONZO Shop, Scott Center, Slack's Shop, Soeucelo Store, Souteo Store, and Srencpeos Store Selling Accounts;

- $2,495,541 against defendant Jun Yi Liang for counterfeit sales from the Aivaeso Redicol, Alvinste Store, Anthons Store, Barry Company, Billy Business, Ceeoty Atoxe, Clara Wholesale, Easrscope Store, Elivera Counly, Hubert Moss, Jeffrey Crof, Kebetty Store, Kingery Store, Lopains Veen, Lvetown, Mardiou US, Meceiall Store, Paksa Store, Vincent Health, Vinecre Onse, Welpance LLC, and Willie Holland Selling Accounts;

- $160,141 against defendant Xiao Liang for counterfeit sales from the Chris Skamp Selling Account;

- $255,351 against defendant Zhi Cheng Liang for counterfeit sales from the Mooky Store, Rimas Store, Roger Store, Sunica Store, Tammly Store, and Yoceiky Store Selling Accounts;

- $312 against defendants Bibo Fang and Jun Wei Liang, jointly and severally, for counterfeit sales from the Tedabe Store Selling Account; and

- $146,749 against defendants Zhi Cheng Liang and Jun Wei Liang, jointly and severally, for counterfeit sales from the David Factory Selling Account.

**D.    Permanent Injunction in Favor of All Plaintiffs**

The Lanham Act includes "the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). The WCPA similarly authorizes injunctions against violations of the statute. RCW 19.86.090.

In trademark cases, courts apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief. *Reno*, 452 F.3d at 1137 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)). Plaintiff must demonstrate: "(1) that it has suffered an

1   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

2   to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

3   and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

4   disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A

5   trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a

6   violation. 15 U.S.C. § 1116(a).

7       Plaintiffs seek a permanent injunction enjoining defendants from their infringing uses of

8   the 3M Trademarks. Specifically, plaintiffs seek an order:

9           permanently enjoining [d]efendants, their officers, agents, servants,
            employees, attorneys, and all others in active concert or
10          participation with them, who receive actual notice of this order,
            from:

11
12              a. selling counterfeit or infringing products in Amazon's
                stores;

13              b. selling counterfeit or infringing products to Amazon or
14              any Amazon affiliate;

15              c. manufacturing, importing, distributing, offering to sell,
                or selling any product using the 3M brand or trademarks, or
16              which otherwise infringes 3M's intellectual property, in
                any store or in any medium; and

17              d. assisting, aiding, or abetting any other person or business
                entity in engaging or performing any of the activities listed
18              in (a) through (c) above.

19  Dkt. No. 39 at 28. Plaintiffs argue that all four *eBay* factors weigh in favor of a permanent

20  injunction. The Court agrees.

21      First, plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have

22  alleged (and the Court accepts as true) that defendants have committed trademark infringement

23  and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). There is no

24  evidence to rebut this presumption.

Second, remedies at law are inadequate to compensate plaintiffs, who have alleged harm to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Dong*, 2024 WL 775000, at *10 (quoting *Wong*, 2024 WL 553695, at *10). Moreover, defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Wong*, 2024 WL 553695, at *10).

Third, the balance of hardships strongly favors plaintiffs. Without an injunction, plaintiffs may suffer further harm to their reputation through counterfeit sales. "On the other hand, because [d]efendants never had a right to infringe [3M's] trademarks in the first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the future." *Id.* (citing *Wong*, 2024 WL 553695, at *10); *see also T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012) (holding defendants had "no legitimate interest in" continuing deceptive conduct).

Finally, a permanent injunction would serve the public interest "in protecting trademark holders' rights and minimizing the confusion caused by the presence of counterfeit products in the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

Therefore, plaintiffs' request for a permanent injunction is GRANTED.

### Conclusion

For all of the foregoing reasons, it is hereby ORDERED that:

(1)  "Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction Against Defendants" (Dkt. No. 39) is GRANTED. The Amazon plaintiffs' claim for false advertising is DISMISSED without prejudice.

(2)    3M is awarded statutory damages in the amount of three times the aggregate sales of counterfeit products from each defendants' respective Amazon Selling Account(s) as follows:

▪ $441,559 against defendant Feng Xia Fang for counterfeit sales from the Annette A. Smith LLC, Chester Supply, Dean Tech, EEG Ventures LLC, Greg Trade, Gretna Mart LLC, Hsiguans LLC, Osagele US, Qcrowe US, and Sherry Online Selling Accounts;

▪ $3,048,306 against defendant Jun Wei Liang for counterfeit sales from the Heaitman Store, Pingping LLC, Rahul Ebert LLC, Tanyaer Store, Abeytube, Brownartic Store, ECEIT RESOD, Hittmedical LLC, John Centers, Keith Supplies, KTPOA US, Luvoice, Maitler Store, Moacrdx Store, ONZO Shop, Scott Center, Slack's Shop, Soeucelo Store, Souteo Store, and Srencpeos Store Selling Accounts;

▪ $2,495,541 against defendant Jun Yi Liang for counterfeit sales from the Aivaeso Redicol, Alvinste Store, Anthons Store, Barry Company, Billy Business, Ceeoty Atoxe, Clara Wholesale, Easrscope Store, Elivera Counly, Hubert Moss, Jeffrey Crof, Kebetty Store, Kingery Store, Lopains Veen, Lvetown, Mardiou US, Meceiall Store, Paksa Store, Vincent Health, Vinecre Onse, Welpance LLC, and Willie Holland Selling Accounts;

▪ $160,141 against defendant Xiao Liang for counterfeit sales from the Chris Skamp Selling Account;

▪ $255,351 against defendant Zhi Cheng Liang for counterfeit sales from the Mooky Store, Rimas Store, Roger Store, Sunica Store, Tammly Store, and Yoceiky Store Selling Accounts;

▪ $312 against defendants Bibo Fang and Jun Wei Liang, jointly and severally, for counterfeit sales from the Tedabe Store Selling Account; and

▪ $146,749 against defendants Zhi Cheng Liang and Jun Wei Liang, jointly and severally, for counterfeit sales from the David Factory Selling Account.

(3)     Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED AND RESTRAINED from:

    a.   selling counterfeit or infringing products in Amazon's stores;

    b.   selling counterfeit or infringing products to Amazon or any Amazon affiliate;

    c.   manufacturing, importing, distributing, offering to sell, or selling any product using 3M's brand or trademarks, or which otherwise infringes 3M's intellectual property, in any store or in any medium; and

    d.   assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities listed in (a) through (c) above.

(4) The Clerk of Court is directed to enter judgment against defendants and in favor of plaintiffs as set forth above.

(5) The Court retains jurisdiction over this case for the purpose of enforcing this Order and Injunction and for any supplemental proceedings that may be authorized by law.

(6) Plaintiffs' counsel is directed to serve a copy of this Order and Injunction on

defendants' last known email addresses registered with Amazon, which plaintiffs

used to complete service.


Dated this 29th day of July, 2024.

Robert S. Lasnik
United States District Judge

ORDER DIRECTING ENTRY OF JUDGMENT AND PERMANENT INJUNCTION - 17